The next case on the call of the docket is Agenda No. 8, Case No. 126291, People of the State of Illinois v. Todd L. Johnson. Ms. Erin Maureen O'Connell for the appellate. Please proceed. Ms. O'Connell Good morning. May it please the Court and counsel. The appellate court's judgment in this case rested on a central legal error, and this Court should reverse. The appellate court misapplied the well-established principle Ms. O'Connell, did you identify yourself for the record? Ms. O'Connell Oh, sorry. Assistant Attorney General Erin O'Connell. Ms. O'Connell Thank you. Ms. O'Connell Sorry about that. This Court should apply its well-established principle that under Strickland v. Washington, a defendant bears the burden of establishing prejudice to prevail on an ineffective assistance claim. A defendant cannot rely on speculation. This Court has applied this principle to every type of Strickland claim. The appellate court here essentially carved out an exception to the general rule for forensic testing. But it had no justification for treating this differently from any other type of claim based on counsel's failure to investigate evidence. So, for example, this Court has required, where counsel has failed to investigate witnesses, that a defendant come forth with some evidence showing what the testimony would have been. Usually this happens in the form of affidavits. A defendant must show that witnesses would have provided helpful testimony, and the court can then weigh that, what the evidence would have been, and determine then whether there is a reasonable probability that evidence would have altered the result. There should be no presumption that applies in cases of forensic testing. The same principle should apply. The court needs to consider. So in this case, there seems to be no dispute that if the forensic testing is carried out and DNA evidence is found on the gun that links the gun to the victim, Aaron Ferguson, that would absolutely devastate defendant's defense. It would undercut the central theory at his trial, which was that this was not the gun used in the offense. Defense counsel relied to great effect on the State's failure to test the swab that had been taken of the gun. So defense counsel brought this out in cross-examination of the investigator. You had taken this swab. Was it tested? No. Why wasn't it tested? Well, the State never asked me to test it. After eliciting that testimony in closing arguments, defense counsel made the case, you know, the State has not met its burden of proof here, and in particular, the State has failed to provide any forensic evidence that would link defendant to this offense. And he faulted the State for failing to test the evidence and failing to meet its burden and said, I'm especially troubled by the lack of forensic evidence here. And we know that this was an effective strategy, because during their deliberations, the jury even came forward with a question for the parties. Why was there no forensic testing? So this resonated with the jury at trial. If the testing is completed and is determined to instead link this gun to the victim, that defense will simply be unavailable. Ms. O'Connell, though, but how could a BB gun support the armed robbery conviction in this case, since defendant really was charged under A2 as being in possession of a firearm and not under A1 as being in possession of a dangerous weapon? So if I understand the Court's question. So we would agree that for the armed robbery conviction, the jury had to conclude that there was an actual firearm used. So, and we don't dispute that if the defendant can make the showing that there's a reasonable probability he would have been acquitted of that and convicted of aggravated robbery, that would suffice under Strickland. The problem here is that theory also rests on the exact same speculation that underlies the general theory here. So that theory also only works if we presume that the results of the testing of the firearm are negative. That theory also would fail and even more definitively fail if instead the testing shows that this was, in fact, the firearm used. And the evidence here, there was a dispute at the trial, a vigorous dispute over whether this was actually the firearm. And in particular, defense counsel relied on an alleged discrepancy in appearance between the gun that was found at the residence and the gun that's visible on the surveillance video. It's possible that the jury didn't convict on the basis that it actually linked this gun in particular. The jury could find, based on the victim's testimony, that there was a gun in the surveillance video, that a gun was used in the crime, and simply concluded, based on that evidence and the evidence linking this defendant to the actual act, the crime that occurred, that this was an armed robbery. So, but we do agree that it would suffice. If the evidence shows that this was not armed robbery, that would be sufficient on a theoretical level to meet the Strickland prejudice standard. And usually when a defendant is claiming ineffective assistance based on a failure to investigate, this Court has recognized. It's entirely proper for that defendant to wait until a postconviction proceeding. These claims will turn on what the evidence is outside of the record that counsel was allegedly ineffective for failing to produce. So usually the proper course is for a defendant to develop the record in a postconviction proceeding. And there's even an established mechanism here in the forensic testing context that will allow a defendant to investigate the forensic testing even before he brings a claim under Strickland. So here, for example, defendant argues that he's entitled to this testing under what is essentially a more lenient standard under 116-3 than the standard under Strickland. He can get testing under the statute without necessarily showing that it would be favorable, but just that it would be materially relevant. And the case law recognizes that the evidence could eventually come out either way, but if he can show that it has the potential to advance a claim of innocence, he can get that testing before he has to meet what is the Strickland standard, which does require him to make this affirmative showing of prejudice. Counsel, at the beginning of your argument, you seemed to be arguing a lack of deficient performance. All three appellate court justices found deficient performance. And let me ask you this. Did you address that issue in your PLA? No. So this is twice procedurally defaulted here, and we fully concede that. So we did not contest in the appellate court that there was that he failed to show that the PLA did not raise that issue. So this is certainly not the central issue in the case, and the Court would have to override the people's forfeiture of this issue. It should do that. A Strickland claim actually has two elements, and he has to meet his burden on both of those. So before affirming the grant of a new trial, this Court should determine that he has met his burden on deficient performance. And here, too, I would like to highlight the sort of irony in the appellate court's decision here. The appellate court recognized that this would be a perfectly valid and explainable strategy. A reasonable counsel could determine that it was potentially harmful to have the forensic testing pursued. And so the appellate court majority acknowledged that ordinarily this would be perfectly fine. The irony is that this means that if the case goes down on a remand, new counsel is appointed, new counsel can make that determination based on this record. New counsel can say, this is more likely to be harmful than helpful, so I, as a strategic matter, am not going to pursue it. The record tends to show that this was trial counsel's decision here, and that's based on the record of the trial and the use of this strategically, eliciting it through the cross-examination. He knew that this evidence wasn't tested, and the reliance on that in closing argument. There was some ambiguity in the record that developed post-trial as to what counsel how he had interpreted the forensic reports. But because it's defendant's burden to show deficient performance, that ambiguity in the record is not sufficient. And this is also the type of thing that's suitable for development on post-conviction. So often, there's also evidentiary development of what counsel's thinking was, whether he had a strategic choice, was it based on a misapprehension of the evidence. So if defendant does pursue this claim in post-conviction, as he should to make his prejudice showing, that would also be something that he could develop at that type of a hearing. We would, however, emphasize that this Court should, in light of the broad legal rule that the appellate court adopted here on prejudice, which will essentially presume favorable results from any omitted forensic testing, this Court should correct that rule as part of its decision here and should reverse the appellate court on that basis. And if the Court has no further questions at this point, we would ask that this Court reverse. Thank you, Ms. O'Connell. And Mr. Jay Wigman for the appellate. Good morning. May it please the Court, counsel. I am Jay Wigman, an assistant appellate defender with the Office of the State Appellate Defender, counsel for Defendant Appellate Todd Johnson, who asserts that the appellate court properly remanded this matter for a new trial in this unusual case where trial counsel provided deficient performance by failing to recognize that he had available evidence at his disposal. And in this case where the defendant was prejudiced because had this evidence been presented, there was a reasonable likelihood that it would have caused him to be found not guilty on the charge of armed robbery. In this unusual case, I think it's important to look to the facts because they both provide a discussion point and they also limit the case. This is not a case, I would submit, that has the broad reach that the State claims, but rather is limited to its facts. And that is first provided in the finding by the appellate court, which indicated that a defendant need only demonstrate a negative DNA result would probably change the outcome of the trial in order to establish prejudice in this context. And context has always been a defining issue in terms of Strickland analysis. The Strickland court stated nearly 40 years ago regarding deficient performance in attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. The State is correct that in this case the majority said that in some cases this would not be deficient performance, in some cases this would not be prejudicial. But in the instant case where you have unusual facts in that there were two, I'll say guns, one was a firearm, one was a BB gun, when two are found, when the question is not the identity of the offender but the identity of the offense, when the question is whether it was armed robbery or aggravated robbery, and where the question relates not to whether the defendant's DNA will be found on a weapon but whether the complainant's DNA will be found on the weapon, these factors limit the case and suggest strongly that it was appropriate for the court to find that performance was deficient, and there really isn't any question about that, and also that there was prejudice to the defendant because there was a very reasonable likelihood that there would be DNA found on the evidence if, in fact, that was the gun that was used. The complainant was struck in the head several times. He bled from a scrape. It is clear that if that were the gun, there was a reasonable likelihood that DNA would be found. And we know this because the crime scene officer specifically tested for DNA because he said it was likely or more reasonably likely that there would be DNA found on there. Certainly, he omitted the fingerprinting process because in his experience with this kind of weapon and this specific manufacturer, fingerprints could not be found on that weapon. But in his experience and in his training, he felt that there was a reasonable likelihood, enough to justify his effort, to test the gun, swab it, and see if, in fact, there was DNA on there. Thus, there was a reasonable likelihood that there would be DNA evidence. To the extent that there is no DNA, then this provides very strong evidence that the firearm was not used and that the defendant at most was guilty of aggravated robbery. So it was appropriate for defense counsel, had he recognized that he had this evidence available, to use that evidence. Now, the State points out that this could go the other way and that the defendant could be found guilty if there is DNA evidence found on the firearm. But, again, Strickland advises us that counsel's actions are usually based quite properly on informed strategic decisions made by the defendant and based on information supplied by the defendant. When we talk about speculation, the defendant is not speculating, is the only one who truly knows what happened at that instance. And when he vehemently insists that the evidence should be tested, first of all, that demonstrates that counsel is not acting in a deficient manner or is prejudicing the defendant if he follows the defendant's lead. And it also demonstrates that the evidence is unlikely to go against the defendant. Where the defendant says this is the strategy that needs to be followed and counsel doesn't even investigate, as occurred in this matter, then counsel has provided both deficient performance and prejudiced the defendant. In that fashion, this is not a deviation from Strickland. It is not an extension of Strickland. After 40 years, Strickland stands up and says, you followed the lead of the defendant, and in different cases, the whether or not it's an error is going to be different. In this case, the appellate court recognized that very often this would not have been error, but in the specifics of this case, and as the appellate court said in this I'm sorry. Why not, as the opposing counsel suggested, you know, she argues this is speculation. Why not go through the legal process of requesting a DNA test afterwards and go through the postconviction process? Well, aside from terms of judicial economy, and I would also note that the question shouldn't be so narrow as to be whether or not a DNA test would provide this evidence. The question is, knowing what the defendant has told counsel and knowing that or, you know, not even recognizing that this evidence was available, the question is, was counsel ineffective in this case? But to more directly answer your question, I'm not so certain that the option of 116-3, that statute, is available to the defendant in this case. Partly because, excuse me, that statute was enacted to provide defendants an outlet when there hadn't been scientific testing available before. And clearly, DNA testing was available in this case. Very specifically, it was available in this case. There is also a question about the one of the requirements of 116-3 is that the case be or the issues turn on identity. And it's not identity of the offender in this case. It's a question of identity of the offense that was committed. So to that extent, it seems more appropriate that this go back for a new trial, because it was clear that the defendant was denied the effective assistance of counsel. And I would note that in remanding this case, the appellate court noted or I'm sorry, the error of counsel regarding a motion, a pretrial motion that had been filed that ultimately wasn't ruled upon and granted specifically the authority to the trial court to reconsider that issue. So the ineffectiveness of counsel isn't simply limited to what is at issue in this case, but in fact is emblematic of it. Counsel, what is the rule of law that, if we were to adopt your position, that trial courts could take from this case? It seems to me that one of the ways to reconcile the various cases, and there aren't very many, that have looked at this issue. But if you look at Peeble v. Mardlin-Johnson in the second district in, I believe, 2010, if you look at the Smith case from the first district that's cited in the briefs, and if you look at Scott that was cited by the dissent, it seems that one of the distinctions in this instance is when it's a question of offender versus offense. In Mardlin-Johnson, there was a question about fingerprints on a car, and what the appellate court noted was that if the defendant's fingerprints weren't on the car, if they were tested and they weren't found there, it might be that he was not guilty of an aggravated kidnapping, but could still be guilty of the offense that occurred in another location. In Peeble v. Scott, again, the question was of identity. And testing wasn't really available in Scott, is somewhat of a side note, not directly answering your question, is that there was a concern about contamination, and that concern didn't exist in this case. So if you're trying to find a rule that applies more broadly, I think that in some ways it's limited to this case, but in some ways it also reflects and reaffirms what Strickland said, which is you have to evaluate what the defendant is saying is the best course of action, and you have to evaluate the specific circumstances of that case. And I don't think that this case extends or alters the reach of Strickland. In this case, are you saying that if this goes back, that counsel must follow what his client requests and ask for testing? I don't think that that's a decision that is reserved to counsel. I think that that is the decision to be made by the defendant, at least in terms of investigation. That's one of the difficulties here, is that while the State wants to argue that defense counsel was sheltered by strategy, this wasn't a strategic question. This was something that was strictly ignored. And if defense counsel follows what defendant says to do, he can't be considered to have committed ineffective assistance. But could counsel conclude that the risks of the testing were greater than the circumstances where it isn't tested? And you can argue they didn't show anything because they didn't show any DNA. I'm not certain, though, and I'm not certain that counsel's determination in that fashion would be reasonable, given what the defendant is telling him. If the defendant tells me, and there is evidence to suggest that the defendant never touched the gun. It was found in drawers, in a box, under clothing that was neatly folded, did not look disturbed, in the dresser in the bedroom of the person who owned the house. She indicated that she had a FOID card, that it was her gun, that nobody in the house knew about the presence of the gun. There is evidence to demonstrate that counsel can correctly assume that when the defendant says, I didn't touch that gun, that in fact he didn't. And in that case, given what is being told, Strickland suggests that counsel going against defendant would be providing ineffective assistance. Just so I understand your position following up on Justice Garma's question, this Court has recognized certain decisions that belong to the defendant, the core principles of criminal justice. Are you saying here that if a defendant requests the lawyer to pursue the DNA testing, that the attorney has an obligation to do that? That the decision about DNA testing rests with the defendant? Is that what you're saying? It is, and I would say that for two reasons. The first is that the opposite is clearly stated in Strickland, where it says if the defendant says, don't follow this path, that counsel provides effective assistance when he determines that that is an area that he doesn't need to investigate. And the second thing is that of the five rights that are reserved to defendants, certainly one of them is whether or not to pursue a lesser included offense. And I recognize that this is not a lesser included offense. But the defendant would have the option to pursue that line of defense and go for something of a mitigated finding. It's still possible in those circumstances for an all-or-nothing approach to be followed. But in answer to your question, I think that that's incumbent upon defense counsel is to follow the lead of the defendant. I'm not certain if I need to address the questions regarding deficient performance. I would note that oversight is not a strategy. Rather, strategy relies and depends upon knowledge. In this case, defense counsel lacked that knowledge and can't be, can't rely on strategy in this case because there was no decision that was made. He said in open court, I was under the impression that there was no DNA sample, and not that it was a DNA sample that wasn't tested. I would also note, as is noted, I believe, by Justice Burke, that even the dissent in this case found that the performance was deficient. In terms of prejudice, the question is not necessarily, and in fact, the State's argument is phrased that way, that you can't necessarily prove this case. And the appellate court majority noted that it's not a question of necessarily leading to a result, but a question of whether there is a reasonable probability of a different result at trial. And that has been found by some courts to even fall under 50% in terms of probability. I would note that there was, if you follow the lead of the investigator, there was a reasonable probability that if that gun was used, the complainant's DNA was on it. There's also a reasonable probability that if the defendant's DNA was not found on that gun, that as the appellate court majority found, the defendant would likely not be found guilty of armed robbery. If there, and then I guess I would say simply as a summation that, again, the question here is not whether the test would have exonerated the defendant, but whether or not it was ineffective assistance of counsel who clearly provided deficient performance and prejudiced the defendant in this case. If there are no further questions, I would ask that this court affirm the finding of the appellate court. Thank you. Thank you, Mr. Liddell. Ms. O'Connell. So defendant has argued that the reason that courts should address a claim like this on direct appeal is judicial economy. I disagree that it promotes judicial economy to precipitously order a new trial, where defendant has yet to prove both prongs of a Strickland claim. As I would disagree that defense counsel on remand does not have a choice whether to pursue testing. But there's also a possibility that the testing that happens is going to be inculpatory rather than exculpatory. Ordinarily where you're in the post-conviction context, a defendant has to prove his Strickland claim to get a new trial. He has to develop the record. The court has to know that there is a reasonable probability of a different result based on what he's put forth. There's no reason to depart from that ordinary rule here, and it actually promotes judicial economy to ensure that there is not going to be a needless retrial here in remand, because either defense counsel has a real strategic reason for not doing this, or because the results are going to undermine the defense. Ms. O'Connell, do you think that the defendant would have argued so vehemently for DNA testing if he actually touched the gun? I mean, I do think a lot of times defendants will strenuously argue on behalf of innocence. He might have believed that it was unlikely, given that there was no visible evidence of DNA, that this would have been exonerating. But I don't think that that controls the Strickland claim on either prong here. So defense counsel's vehemence about the testing doesn't control whether defense counsel validly pretrial would decide not to pursue this route. And it also I don't think should be considered in terms of whether he's demonstrated prejudice under Strickland. That ultimately can't turn on what his speculation is as to whether this will be helpful, but instead on whether it would, in fact, be helpful. And there needs to be that testing first to determine that that's the case. Do you concede that 116.3 proceedings are available to the defendant? They're certainly available to him at this point. As far as I know, he has never requested them. He could even request them now before this Court decides the case. And the standard there is more lenient than the standard he has to make under Strickland. So based on the cases he cited as to whether this is materially relevant, that would appear to be available to him. And the State never argued either in the trial court or here that he doesn't meet the substantive standard under 116-3. So he certainly has the ability to pursue that remedy at this point, and then based on the results of that, to then pursue this claim in a post-conviction proceeding. Is this a little bit different, though, because the testing, as counsel pointed out, is really the question is does it show the DNA of the victim instead of the defendant? Is that playing into the, you know, whether or not the DNA statute comes into effect? So I think under the standard of the statute, that would be enough. I don't think it has to be the sort of direct evidence of identity, the stereotypical sort of DNA exoneration in, say, a sexual assault case. It can be more just materially relevant to the claim. And I know the defendant has cited some cases that have applied it in these different contexts to find that testing is available even where it's not this central evidence but more of a circumstantial piece of evidence that would go to be materially relevant to a claim of innocence. So even under those circumstances, the testing should be available to defendant. And if there are no further questions, we would ask that this Court reverse the judgment. Thank you. Case number 126291, people of the State of Illinois v. Todd L. Johnson, will be taken under advisement by the Court as agenda number 8.